GAY VETERANS ASSOCIATION, INC.,
John Paine and Robert
Walden, Plaintiffs,

v.

The AMERICAN LEGION—NEW YORK COUNTY ORGANIZATION, Reginald B. Allen, Jr., individually and in his capacity as Parade Chairman of the American Legion—New York County Organization; Anthony F. Tuccillo, individually and in his capacity as Adjutant of the American Legion—New York County Organization; City of New York; Edward I. Koch, individually and in his capacity as Mayor of the City of New York; New York City Police Department: Benjamin Ward, individually and in his capacity as Commissioner of the New York City Police Department; Robert J. Johnson, Jr., Gerard J. Kerins, Tosano J. Simonetti, J. Johnson, Henry A. Harrison, and John Doe, individually and in their capacities as officers of the New York City Police Department, Defendants.

No. 85 Civ. 8339 (CBM).

United States District Court,
S.D. New York.

Nov. 6, 1985.

---

Lambda Legal Defense Fund and Education Fund, Inc., David H. Braff, Sherryl E. Michaelson, Steven L. Holley, Teitelbaum & Hiller, P.C. by William Hibsher, New York City, for plaintiffs.

Frederick A.O. Schwarz, Jr., Corp. Counsel by Marilyn Richter, Robert Ligansky, Asst. Corp. Counsel, New York City, for New York City defendants.

Casimir F. Sojka, New York City, Francis L. Giordano, Brooklyn, N.Y., for American Legion defendants.

## OPINION

MOTLEY, Chief Judge.

Plaintiffs, the Gay Veterans Association, Inc. ["Gay Veterans"] and two of its officers, Robert Walden, Secretary, and John Paine, President, have commenced this action against the New York County American Legion, the Mayor of the City of New York and various other defendants seeking injunctive and other relief. The action is brought pursuant to 42 U.S.C. sections 1983, 1985(3) and 1986. Plaintiffs, pursuant to an order to show cause, have moved for a preliminary injunction directing defendants to permit the Gay Veterans to participate in the 1985 Veterans Day Parade or, in the alternative, requiring the City to revoke the permit issued to the Legion and to issue a parade permit to the Gay Veterans instead. Defendant New York County American Legion ["American Legion"] has moved to dismiss this action. For the reasons set forth below, plaintiffs' motion for preliminary injunction is denied. Defendant American Legion's motion to dismiss also is denied.

## FACTS

Congress decided in 1919 to designate November 11 as a national holiday, Veterans Day, to honor those individuals who have served in the Armed Forces of the United States, placing their lives and welfare at risk in the defense of this country. 5 U.S.C. section 6103(a). In addition, New York State and New York City have recognized Veterans Day as an official holiday. *See, e.g.,* New York General Construction Law, section 24. Section 12 of the New York General City Law provides that the City may expend monies to observe Veterans Day in cooperation with veterans' organizations.

Since 1923, the American Legion has held a Veterans Day parade in Manhattan. The parade now commences at 9 A.M. at 39th Street and Fifth Avenue, and finishes at the Eternal Light Monument which commemorates the American Expeditionary Forces in France during World War I. This monument is located at 24th Street. A ceremony consisting of speeches, wreath and flag laying, and a moment of silent prayer immediately follow the parade at the monument.

In addition to the American Legion's parade, several other organizations have ceremonies in New York City on Veterans Day. On November 10, the Federation of World War Veterans of France holds a rally in Riverside Park to commemorate World War II victories and to honor World War I and II Veterans. On November 11, the Vietnam Veterans of America will hold a memorial service in Abingdon Square Park. In Queens, Post 422 of the American Legion will hold a ceremony in Daniel Beard Park. The United Veterans' Committee will hold a parade and ceremony in Memorial Park in the Bronx. The United War Veterans Memorial and Executive Committee will hold a ceremony in Pelham Bay Park. (Testimony of Chief Kerins; Affidavit of Frank Leslie, Assistant Counsel of the New York City Department of Parks and Recreation, paragraphs 2–8.) The American Legion's parade is the only parade in Manhattan, the hub of New York

City. The City of New York does not provide funding for any these events, including the American Legion's parade. The City, in fact, presently has no official City celebration of Veterans Day other than giving its employees the day off from work. (Testimony of Chief Kerins; Affidavits of Marilyn Richter, Assistant Corporation Counsel, paragraph 12; Frank Leslie, paragraph 10; Linda Cahill, Special Assistant to the Mayor and Director of the Mayor's Office of Special Projects and Events.)

Each year the American Legion procures a permit from the City of New York for the parade as required pursuant to section 435–9.0 of the New York City Adminstrative Code. The defendant New York City Police Department reserves the permit for the American Legion since it is an annual event. Chief Gerard J. Kerins, a defendant in this action, stated that permits are reserved for traditional parades. A traditional parade is one for which a parade permit has been issued to the same group or organization for two or more years. He testified that by utilizing this method of issuing permits, the City is able to estimate in advance the police manpower it will require to govern the parade. It also provides the City with a means to determine who should receive a permit when two parties with conflicting goals seek a parade permit for the same route.

In 1984, the Gay Veterans sought permission of the American Legion to participate in the Veterans Day Parade. (Testimony and Affidavit, paragraph 12 of Robert Walden.) Receiving no response from the American Legion, plaintiffs complained to the Mayor. Lee Hudson, assistant to Herbert P. Rickman, Special Assistant to the Mayor, arranged a meeting between representatives of the American Legion and the Gay Veterans. The Legion advised the Gay Veterans that parade participants were members of the American Legion. (Affidavit of Herbert P. Rickman, Paragraphs 3 & 4).

The official parade program for the 1984 American Legion Parade, however, indicates that several veteran groups not affiliated with the American Legion participated in the American Legion parade. In addition, the program also provides that the parade is conducted by the American Legion "under the auspices of the City of New York." (Plaintiff's Exhibit "6".) Philip Kaplan, Master of Ceremonies and past Post Commander of the New York County American Legion, testified that the parade was not held under the auspices of New York City, and that although this phrase had been included on other programs for many years, it was an error. He testified that the American Legion received no financial support from the City and paid all of its costs in sponsoring the parade.

On January 2, 1985, the Gay Veterans filed two applications with the New York Police Department for a parade permit. The first application requested permission to march down Fifth Avenue from 39th Street to the Eternal Light Monument on November 11, 1985 at 10:00 A.M. This is the same time and place that the American Legion holds its annual parade down Fifth Avenue. The request was disapproved by Chief Kerins on the grounds that this was a new parade for Fifth Avenue and that there is "a traditional Veterans Day Parade held on November 11, 1985." (City Defendants' Exhibit "A".)

Plaintiffs' second application sought a permit for a parade to start at Jeanette Park on Water Street and to finish at the Eternal Light Monument on 24th Street. The permit was disapproved because the parade would result in a "complete disruption of traffic in the financial district during a work day" and manpower requirements for the parade at the time, date and location would be excessive. (City Defendants' Exhibit "B".) Chief Kerins testified that many businesses are open on Veterans Day and that plaintiffs' request for a parade three and one-half miles long would be excessively disruptive to business. Chief Kerins recommended disapproval of the parade because it would deplete already scarce personnel resources and further disrupt traffic. (City Defendants' Exhibit "B".) He testified that the Police Department would prefer one Veterans Day parade but that two parades would be manageable if they were held on parallel

routes or if one parade was held following the other. Plaintiffs never sought a permit for another parade route, although the City defendants have agreed to issue them a permit for another location in Manhattan.

On July 23, 1985, defendant Reginald B. Allen, Jr., Parade Chairman of the New York County American Legion, filed an application requesting a permit for the organization's Veterans Day Parade. The request was granted. On August 21, the Gay Veterans wrote to defendant Anthony F. Tuccillo, Adjutant of the American Legion, requesting to be included in the 1985 parade. The letter also provided that the Gay Veterans "insist on being allowed to carry our banner, which clearly identifies us as gay veterans." By letter dated September 25, 1985, defendant Tuccillo "categorically denied" plaintiffs request to participate in the parade carrying the Banner. (Walden Affidavit, Exhibits "A" and "B".)

On September 28, 1985, plaintiffs wrote to Mayor Koch, requesting that the City revoke the permit issued to the American Legion on the ground that it discriminated against the Gay Veterans. (Walden Affidavit, Exhibit "I".) The Mayor has refused to revoke the permit. By letter dated October 9, 1985, however, Mayor Koch wrote to defendant Tuccillo, expressing his "sincere hope that [the American Legion] reconsider [its] position in this matter." The Mayor stated:

> I have always believed that those who served our country honorably and were so discharged from the service have a right and almost an obligation to display their pride on Veterans Day. All those who served and sacrificed in defense of the nation deserve to be honored—regardless of their religious beliefs, ethnic background or sexual orientation. All veterans should be entitled to march on November 11 regardless of their particular organizational affiliation.

(Walden Affidavit, Exhibit "J".) The American Legion apparently did not respond to the Mayor's impassioned plea for equality of recognition and acceptance of all who died or risked their lives for us all.

Plaintiffs then commenced this action against defendants New York County American Legion, Reginald B. Allen, Jr. and Anthony F. Tuccillo ["American Legion defendants"], and the City of New York, Mayor Koch, New York City Police Department, Benjamin Ward, Commissioner of the New York City Police Department, Robert J. Johnson, Jr., Gerard J. Kerins, Tosano J. Simonetti, J. Johnson, Henry A. Harrison, and John Doe, officers of the New York City Police Department ["City Defendants"].

DISCUSSION

LACHES

■ The City defendants argue that plaintiffs' claims for preliminary injunctive relief and damages should be dismissed under the doctrine of laches. This action was commenced on October 23, 1985, less than three weeks before Veterans Day.

Laches, an equitable doctrine, is applicable if the following requirements are established: (1) inexcusable delay or lack of diligence on the part of plaintiff, and (2) injury to defendant due to plaintiff's inaction. *Costello v. United States*, 365 U.S. 265, 282, 81 S.Ct. 534, 543, 5 L.Ed.2d 551 (1961). The facts of each case must be considered in determining whether the doctrine of laches should be applied to the facts of the particular case. Whether or not laches exists is addressed to the sound discretion of the trial judge. *Czaplicki v. The Heogh Silvercloud*, 351 U.S. 525, 76 S.Ct. 946, 100 L.Ed. 1387 (1956); *Gardner v. Panama Railroad Co.*, 342 U.S. 29, 72 S.Ct. 12, 96 L.Ed. 31 (1951).

Plaintiffs, by commencing their action and seeking preliminary relief less than three weeks before the parade, have placed a strain on the already overtaxed resources of the court. In addition, defendants, in opposing the preliminary injunction application, have been faced with the difficult task of addressing important constitutional issues and preparing for an evidentiary hearing in just a few days.

Part of the delay, however, is attributable to the actions of American Legion de-

fendants who did not advise plaintiffs that they would not be allowed to march in the Veterans Day parade until September 25, 1985. While this court does not condone last minute applications for preliminary relief, particularly in a case such as this where difficult issues of law must be addressed by all parties and decided by the court, the equitable doctrine of laches should not be a bar to the preliminary relief sought by plaintiffs in this case. Plaintiffs were lulled into believing that the intervention of the Mayor's office and the Mayor's generally supportive view of the civil rights of homosexuals would be sufficient to persuade the American Legion of the merits of their position. Accordingly, the motion of the City defendants to dismiss this motion on the ground of laches is denied.

## AMERICAN LEGION'S MOTION TO DISMISS

■ Defendant American Legion—New York County, Reginald B. Allen, Jr. and Anthony F. Tuccillo, have moved to dismiss the action because, they assert, plaintiffs are not veterans. According to the American Legion defendants, plaintiffs only want to participate in the parade "to showcase their lifestyle and have others recognize it." Relying on the certificate of incorporation of plaintiff, Gay Veterans Association, Inc. (American Legion Defendants' Exhibit A), the American Legion defendants allege the organization is merely a social club.[1] Since the certificate of incorporation does not indicate that the Gay Veterans have organized for patriotic reasons, or does not limit membership to only

veterans, American Legion defendants contend that preliminary relief must be denied and the action dismissed.

Evidence presented at the evidentary hearing, however, establishes that membership in the Gay Veterans is limited to veterans and those currently serving in the Armed Forces of the United States. *See* Constitution of Gay Veterans Association, Inc., Plaintiffs' Exhibits "1" and "2".[2] Prior to approval of any application for membership in the Gay Veterans Association, a prospective member must show his or her Form DD–214 or other document indicating attachment to or separation from a branch of the Armed Forces. In addition, plaintiff Robert Walden, Secretary of the organization, testified that among the activities undertaken by the association are visiting gay veterans in Veterans Administration hospitals, assisting its members in receiving benefits due to them from the Veterans Administration, assisting gay males and lesbians currently serving in the Armed Services, and participating in patriotic events, such as the Vietnam Veterans Parade held in New York City in May, 1985 and a Memorial Day wreath laying ceremony at the Tomb of the Unknown Soldier in Arlington National Cemetery on Memorial Day. *See also* Affidavit of John Paine, Exhibits "D", "E", "G", and "K". The evidence clearly establishes that plaintiff, Gay Veterans Association, Inc., is a veterans organization, dedicated to assisting its members and honoring those who have served in the Armed Forces of this country. Accordingly, American Legions' defendants motion to dismiss the complaint on the

---

1. The Certificate of Incorporation of the Gay Veterans Association, Inc., sets forth the purposes of the organization as follows:

   To promote friendship among its members; to inculcate in them a high sense of loyalty to each other; to stimulate their intellectual advancement, and to hold meetings and social gatherings for the better realization of such purposes.

   To do any other act or other thing incidental to or connected with the foregoing purposes or in advancement thereof, but not for the pecuniary profit or financial gain of its members, directors, or officers except as permitted under Article 5 of the Not-For-Profit Corporation Law.

American Legion Defendants' Exhibit "A".

2. The Constitution of the Gay Veterans Association, in Article IV, section 1, provides that "[m]embership is open to any individual upon proof of Military Service attachment or separation." (Plaintiffs' Exhibit "1".) In addition, a pamphlet sent to prospective members of the organization states the same. (Plaintiffs' Exhibit "5".) Robert Walden testified during the evidentary hearing that all members of the association are veterans. According to Mr. Walden, to date only gay male or lesbian veterans have applied to join the group.

ground that plaintiff is not a bona fide veterans' organization is denied.

## PRELIMINARY INJUNCTION

Plaintiffs, in order to obtain a preliminary injunction, must demonstrate irreparable harm and either a likelihood of success on the merit or substantial questions going to the merits to make them fair ground for litigation, coupled with a balance of hardship tilting in their favor. *Mitchell v. Cuomo,* 748 F.2d 804, 806 (2d Cir.1984); *Sierra Club v. Hennessy,* 695 F.2d 643, 647 (2d Cir.1982).

" 'The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.' " *Olivieri v. Ward,* 766 F.2d 690, 695 (2d Cir.1985) (Kearse, J., dissenting), *citing Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 2689, 49 L.Ed.2d 547 (1976); *414 Theatre Corp. v. Murphy,* 499 F.2d 1155, 1160 (2d Cir.1974). In the absence of preliminary relief, plaintiffs would be denied the opportunity to march in the American Legion's Veterans Day parade on November 11, 1985. Such injury would be irreparable. Therefore, the issues before the court are whether plaintiffs can demonstrate a likelihood of success on the merits of their First Amendment claim, or at least serious questions on the merits and a balance of hardships tilting in their favor.

■ In considering the merits of plaintiffs' claims, it is evident that plaintiffs, as a matter of law, will not prevail on their claims brought pursuant to 42 U.S.C. sections 1985(3) and 1986.[3] Under the most

expansive interpretation of these provisions a plaintiff, in order to support a claim under these sections, must be a member of a statutorily protected class. *See, e.g., Lapin v. Taylor,* 475 F.Supp. 446 (D.Hawaii 1979) ("Whistle blowers" are "class" within meaning of section 1985(3) since federal legislation provides them with special protection). Other courts have defined "class" more narrowly, holding the class protected by this provision must be possessed of discrete, insular and immutable characteristics comparable to those characterizing classes such as race, national origin and sex. *Savina v. Gebhart,* 497 F.Supp. 65 (D.Md.1980); *Orshan v. Anker,* 489 F.Supp. 820 (E.D.N.Y.1980).

In *DeSantis v. Pacific Tel. & Tel. Co., Inc.,* 608 F.2d 327, 332–33 (9th Cir., 1979), the Ninth Circuit held that gay males and lesbians do not constitute a "class" within the meaning of section 1985(3). The court stated:

> While [section] 1985(3) has been liberated from the now anachronistic historical circumstances of reconstruction America, we may not uproot [section] 1985(3) from the principle underlying its adoption: the Governmental determination that some groups require and warrant special federal assistance in protecting their civil rights. This underlying principle must continue to determine the coverage of [section] 1985(3).

*Id.* at 333.

The Ninth Circuit noted that "suspect" or "quasi-suspect" classifications have not

---

**3.** 42 U.S.C. section 1985(3) provides in relevant part:

If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws ... if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such inju-

ry or deprivation, against any one or more of the conspirators.

Section 1986 provides in pertinent portion:

Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action ....

been given to gay males or lesbians. In addition, Congress has rejected attempts to pass legislation providing this group with special protection. *Id.* Accordingly, pursuant to the current state of the law, it appears plaintiffs will not prevail on their claims under section 1985(3). Since section 1986 refers to the class of persons protected by section 1985, it also is apparent that plaintiffs will not prevail on their section 1986 cause of action. Consequently, there is an absence of any serious questions on the merits in regards to these claims.

■ Plaintiffs' cause of action predicated on 42 U.S.C. section 1983, alleges that the American Legion defendants and City defendants conspired together to deprive plaintiffs of their constitutional right to freedom of expression and equal access to a public forum. To prevail on their 1983 claim, plaintiffs must establish (1) that defendants subjected plaintiffs to a deprivation of a federally protected right; (2) that the defendants acted "under color of law", and (3) that plaintiffs are protected "persons" within the meaning of the statute. *Barrett v. United States*, 689 F.2d 324, 221 (2d Cir.1982), *cert. denied*, 462 U.S. 1131, 103 S.Ct. 3111, 77 L.Ed.2d 1366 (1983). It is undisputed that plaintiffs are "persons" under section 1983. It also is undisputed that the defendant City officials acted under color of state law. It is further undisputed that the Mayor urged the American Legion to permit plaintiffs' members to march in the parade identifying themselves by their banner. It is likewise uncontested that the Mayor offered and still offers to sit down with plaintiffs and work out an alternative route for plaintiffs' parade on the same day. Furthermore, plaintiffs were permitted to march during the one City sponsored ticker-tape parade held in honor of veterans, the Vietnam Veterans Parade in May. (Affidavit of Herbert P. Rickman, paragraphs 5–6.) There is consequently insufficient evidence to support plaintiffs' conspiracy theory.

It is undisputed that the American Legion will not permit plaintiff to march in the parade carrying their banner indicating that its members are gay veterans, while other organizations which participate in the parade are permitted to carry banners or flags with their names on it. There is, however, insufficient evidence of action "under color of law." The City of New York provides no funding to the American Legion or its Veterans Day parade. The parade is not the only event of the day or an official event. It is just one of many ceremonies held throughout New York City to commemorate Veterans Day.

■ The City did deny plaintiffs' request for a parade permit for a parade down Fifth Avenue on the ground that at that date, time and hour, the American Legion traditionally held its parade. The First Amendment requires that a policy concerning the issuance of parade permits be (1) content neutral, (2) narrowly tailored to serve significant government interests, and (3) leave open ample alternative channels for communication. *Clark v. Community For Creative Non-Violence*, 468 U.S. 288, 104 S.Ct. 3065, 3096, 82 L.Ed.2d 221 (1984).

The City's decision to deny the Gay Veterans the permit for a parade down Fifth Avenue, however, was not because of any discriminatory animus, or an attempt to deprive plaintiffs of their First Amendment rights, but because, as a matter of administrative policy, it reserves certain routes, dates, times and places for what have become annual events. For instance, a parade permit is reserved for the New York County Board of the Ancient Order of Hibernians for the St. Patricks Day Parade on March 17. A permit will be issued for no other parade on Fifth Avenue other than the Gay Pride Parade on the last day of June. Fifth Avenue is reserved on Labor Day for the parade of the New York City Central Labor Council AFL–CIO. Any group is eligible for priority after it has held two parades. (Testimony of Chief Kerins.) Thus, the evidence indicates that the permit issued to the American Legion was pursuant to a content-neutral standard. *See Tacynec v. City of Philadelphia*, 687 F.2d 793 (3d Cir.1982).

Furthermore, the evidence indicates that the tradition system serves a significant

government interests in New York. It allows the police to determine their man-power needs in advance. In addition, according to Chief Kerins, if permits were issued on a first come, first served basis as suggested by plaintiffs, friction could develop between the many ethnic groups who have parades in the City, as they raced to the precinct window to file for the best parade route. Moreover, this system serves the constitutional rights of the spectators who desire to witness the huge annual parades. *See Virginia Pharmacy Board v. Virginia Consumer Council,* 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976).

■ The Police Department's decision to deny the request for a permit for a parade commencing up Water Street was reasonable. While Veterans Day is a public holiday, many businesses are open, including retail stores. A parade three and one-half miles long through the City's financial district and business areas would cause a significant disruption of traffic. Since there are other alternative routes available to the plaintiffs in the City, the denial of the permit did not constitute a violation of the First Amendment.

It is not disputed that the mere issuance of a permit does not constitute state action. Although the American Legion is given a priority as to the issuance of a permit for a Fifth Avenue parade on the morning of November 11, 1985, other groups also are given a priority. As indicated previously, a permit is reserved for the Gay Pride Parade on the last Sunday in June in order to allow the Gay community the opportunity to express its views. Since society's interests in order dictate that all groups seeking to parade cannot do so at the same time or place, the granting of a preference as to a particular time and site is not enough to convert the acts of the American Legion into state action.

Plaintiffs argue that the American Legion parade is a public forum because its purpose is to celebrate a public holiday, Veterans Day, in a public street. This, however, does not turn a private parade into a public forum. Under New York law, the sponsorship of parades to celebrate Veterans Day is not an exclusively public function. The evidence presented at the hearing also indicates that even traditionally it was not an exclusive governmental function. (Testimony of Philip Kaplan). While the City, pursuant to the New York General City Law, may spend money for Veterans Day observances, it is not required to and does not do so.

Plaintiffs rely on *North Shore Right to Life v. Manhassett American Legion,* 452 F.Supp. 834 (E.D.N.Y.1978), in which Chief Judge Weinstein held that the refusal of the American Legion to allow a controversial organization to march in the local Memorial Day parade constituted state action in violation of the group's civil rights. In that case, the Town of North Hempstead had granted the American Legion permission to conduct a parade on Memorial Day for many years. This parade, however, was in a small town and the entire community participated in the parade. It was not only a Memorial Day parade, it was the town's annual parade. This is not true of American Legion's Veterans Day parade in New York City. Ample alternative channels for communication exist for plaintiffs as demonstrated by the fact that other veterans' organizations hold ceremonies commemorating the holiday throughout the City.

In addition, Chief Judge Weinstein relied on *Evans v. Newton,* 382 U.S. 296, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966), where the Supreme Court held:

> Conduct that is formally 'private' may become so entwined with governmental character as to become subject to the constitutional limitations placed upon state action.... [W]hen private individuals or groups are endowed by the State with powers or functions governmental in nature, they become agencies or instrumentalities of the State and subject to its constitutional limitations.

*Id.* at 299.

Since Chief Judge Weinstein's decision, however, the Supreme Court has provided further guidelines in determining whether the actions of a private group constitute

state action. In *Rendell-Baker v. Kohn*, 457 U.S. 830, 842, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982), the Court ruled that in determining whether a private actor is performing a public function the court must consider "whether the function performed has been 'traditionally the exclusive prerogative of the state.' " *Id.* (citations omitted). The mere performance of a public function does not make the acts of a private entity state action. *Id.*

In this case, the sponsorship of parades to celebrate public holidays, even Veterans Day, has not been traditionally an exclusively governmental function. Accordingly, based on the evidence and law, this court must find for the purposes of the preliminary injunction motion, that the American Legion was not acting under color of law when it refused plaintiffs' request.

This court finds that plaintiffs have failed to prove a likelihood of success on the merits. Additionally there appears to be no serious questions going to the merits. Even if serious questions going to the merits were to exist, it cannot be said that the balance of hardships tips decidedly in plaintiffs' favor; for in the absence of a showing of state action, the First Amendment rights of the American Legion defendants must also be considered.

Plaintiffs' motion for a preliminary injunction is denied. The American Legion defendants' motion to dismiss the complaint is denied. The next pretrial conference in this matter will be held on Friday, November 15, 1985 at 12 noon.