Lawrence OTWAY, Trudy Rudnick, Jonathan Hutson, and John Carey, petitioning on behalf of themselves and all others similarly situated, Petitioners,

v.

The CITY OF NEW YORK, Raymond Kelly, as Police Commissioner, and Emily Lloyd, as Sanitation Commissioner of said City of New York, and Ruth W. Messinger, as President of the Borough of Manhattan, Respondents.

No. 93 Civ. 1499 (KTD).

United States District Court,
S.D. New York.

April 15, 1993.

whistleblower claim of a public employee could be dismissed under the reasoning of *Austin*.

William M. Kunstler, Ronald L. Kuby, Margaret L. Ratner, of counsel, New York City, for petitioners.

O. Peter Sherwood, Corp. Counsel of the City of New York (Virginia Waters, Lorna B. Goodman, Asst. Corp. Counsels, of counsel), New York City, for respondents The City of New York, Raymond Kelly as Police Commissioner, Emily Lloyd as Sanitation Commissioner of said City of New York, and Ruth W. Messinger as President of the Borough of Manhattan.

New York Civ. Liberties Union Foundation[1] (Norman Siegel, Arthur N. Eisenberg, of counsel).

Center for Constitutional Rights (Joan P. Gibbs, of counsel), New York City, for amicus curiae.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge.

This is the next chapter of the seemingly never ending litigious saga of the New York St. Patrick's Day Parade. After the filing of my decision of February 26, 1993 in which I ordered that the city respondents issue a St. Patrick's Day parade permit to the Ancient Order of Hibernians, *New York County Board of Ancient Order of Hibernians v. Dinkins et al.*, 814 F.Supp. 358 (S.D.N.Y. 1993), the petitioners in the instant case brought this Article 78 proceeding (in the nature of prohibition and mandamus) seeking

1. It should be noted that the NYCLU has appeared aligned as *amicus curiae* both supporting and opposing the positions taken by the City of

the relief by way of an order to the City of New York prohibiting:

(1) The St. Patrick's Day Parade to utilize Fifth Avenue or any City thoroughfare;
(2) the utilization or employment of any of its personnel in connection therewith; and
(3) the utilization of any public funds in connection therewith.

Verified Petition at 10.

### Procedural History of This Case

Certain procedural matters must be addressed before I can turn to the merits of this case. The matter was instituted by the filing of a Verified Petition under Article 78 in New York State Supreme Court, New York County and the issuance of an Order to Show Cause as to why the petition should not be granted. This filing occurred on March 10, 1993. On March 11, 1993, The City of New York and the municipal respondents removed this Article 78 proceeding to this court and filed answering affidavits. (These answering affidavits are the "Answer or Responsive Pleading" in an Article 78 Proceeding).

■ Discovering that the matter had been removed to this court, counsel to the petitioners sought to withdraw and abandon all claims except those filed under the State Constitution by the filing in the state court of an "Amended Complaint." Apparently petitioners' counsel did not realize that jurisdiction over this matter rested solely in the federal courts upon the filing of the petition of removal, and can only be restored to the state court by an order of remand. *See* 28 U.S.C. § 1446(e); *United States ex. rel. Echevarria v. Silberglitt*, 441 F.2d 225 (2d Cir.1971); *National S.S. Co. v. Tugman*, 106 U.S. 118, 122, 1 S.Ct. 58, 60–61, 27 L.Ed. 87 (1882). Accordingly, the "amended complaint" was not filed in federal court.

Since a "responsive pleading" had at that time been filed in this court, and neither a "so ordered"—stipulation nor an order of this court permitting amendment of the Verified Petition was filed by the time of argument, *cf.* Fed.R.Civ.P. 15, I refused to give any

New York. The aid of this amicus curiae is appreciated.

effect whatsoever to the "Amended Complaint" filed in state court. This, of course, could not forestall counsel for the petitioners from abandoning certain factual allegations or admitting that there was no basis whatsoever to others. For example, counsel for the petitioners asserted in the Verified Petition that "city employees who elect to march in the Parade are paid for or because of their participation therein by the city." Verified Petition ¶ 8. The media featured this assertion in coverage of this law suit. This now turns out to be totally untrue. Those members of the New York uniformed forces (Police Department, Fire Department, Sanitation Department, etc.) take a day without pay and apparently march in the parade as a matter of pride and solidarity with whatever they perceive the message of the Parade to be.

At argument, counsel for the petitioners also conceded that the city treasury would expend no monies on the St. Patrick's Day Parade, except for police functions and the Sanitation Department clean up during and after the Parade. It was also clear that these services are the same as those provided for any other parade. Other assertions of the Verified Petition are similarly false.

### The Merits of Petitioners' Claims

The Verified Petition herein quotes extensively (but selectively) from the opinion of this court filed on February 26, 1993, and from certain other documents filed in the *County AOH v. Dinkins, supra*, action. Some of these quotes are taken totally out of context for the purpose of asserting that permitting the AOH to have its St. Patrick's Day Parade amounts to a prohibited "establishment of a religion" in violation of the First Amendment of the United States Constitution as well as Article 1, Section 3 of the State Constitution. It is assumed that the reader is totally familiar with my opinion in *County AOH v. Dinkins, supra*, and my holding that a parade such as the St. Patrick's Day Parade is an exercise in "free speech" as guaranteed by the United States Constitution.

Thus, the short answer to the arguments of petitioners' counsel is merely to point out that what is sought by this action is to deny "free speech" to anyone who may seek to express religious views. When asked to define "religious" or "religion" at argument, petitioners' counsel suggested such an expansive definition that for example, it included even the Old Russian Communist Party which set out to destroy all religion. *See* Transcript, Oral Argument held Mar. 15, 1993 ("Tr."), at 21–22. Even Nihilism can be viewed as a "religion". If the position advocated by the petitioners were the law, then truly there would be no such thing as "free speech".

It is somewhat amazing that those who loudly claim to be liberal and espouse the cause of "freedom of speech" would undermine that very freedom when they disagree with the message spoken by others. This Court, however, must uphold the Constitution and the freedoms guaranteed thereunder for all of the people.

Moreover, the St. Patrick's Day Parade in no way violates the "Religious Establishment" Clause of the United States Constitution. I must first point out one of the main distinctions in focus between the legal analysis of a "free speech" question and the legal analysis of an "establishment of religion" question. In a "free speech" question, the focus centers on the freedom of the speaker and incidentally on the government to see if the government action abridges that freedom of speech. In an "establishment of religion" question, the focus is upon whether the government action is *purposed* to endorse or advance religion or involves an excessive entanglement with religion. *Lemon v. Kurtzman*, 403 U.S. 602, 612–13, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971).

A government must avoid violation of free speech rights even if the content of that speech involves religion. Thus, a government must permit people to exercise their right of free speech in a public park. If some person chooses to make that speech a prayer, a hymn or even a liturgy, there is no action by the government to "establish a religion." If the government issues permits for assemblies in public places without any purpose of endorsing or advancing religion or involving an excessive entanglement, then the issuance of the permits is neutral even if the assembly and free speech is used for

what the speakers perceive to be religion. *Fowler v. Rhode Island,* 345 U.S. 67, 73 S.Ct. 526, 97 L.Ed. 828 (1953) (Jehovah's Witnesses must be permitted to use public park to hold Bible talk); *Kunz v. New York,* 340 U.S. 290, 71 S.Ct. 312, 95 L.Ed. 280 (1951) (Baptist minister permitted to hold religious meeting on public street); *O'Hair v. Andrus,* 613 F.2d 931 (D.C.Cir.1979).

In the instant situation, it is clear that the City of New York and its officials issue parade permits to any organization requesting such a right. Permits thus are issued (and parades held) for causes as varied as the Gay Rights Parade; La Gran Parada Cubana; The Islamic Society of North America; The International Society for Krishna Consciousness; and, The Jafira Association of North America, which commemorates "the martyrdom of IMAM Husam Grandson of our prophet." The issuance of the permit is totally neutral. The City supplies each of these parades with Police Department and Sanitation Department clean-up services.

As to the St. Patrick's Day Parade, the City of New York expends no funds nor does it promote, in any way, the parade. Indeed, the New York Civil Liberties Union ("NYCLU") reports that the Mayor of the City has engaged in a "public denunciation of the Hibernians" as the sponsors of the St. Patrick's Day Parade. *See* Brief of *Amicus Curiae* NYCLU at 4–5. Under these circumstances, it is laughable to argue (as do the petitioners) that the issuance of the parade permit by the City was purposed to endorse or advance a religion as defined or perceived by the Ancient Order of Hibernians.

To put this in the words of the first two prongs of the test enunciated by the Supreme Court in *Lemon v. Kurtzman, supra:*

> First the [issuance of parade permits without regard to the message of the parade has merely] a secular . . . purpose; second, [the] principal or primary effect [of the issuance of parade permits without regard to the message of the parade is] one that neither advances or inhibits religion.

403 U.S. at 612–13, 91 S.Ct. at 2111.

### Secular Purpose

◼ *Lemon's* first prong focuses on whether the "government's actual purpose is to endorse or disapprove of religion." *Lynch v. Donnelly,* 465 U.S. 668, 690, 104 S.Ct. 1355, 1368, 79 L.Ed.2d 604 (1984) (O'Connor, J., concurring). "[T]he prohibition of government endorsement of religion 'preclude[s] government from conveying or attempting to convey a message that religion or a particular religious belief is favored or preferred.'" *Allegheny County v. Greater Pittsburgh ACLU,* 492 U.S. 573, 593, 109 S.Ct. 3086, 3101, 106 L.Ed.2d 472 (1989) (quoting *Wallace v. Jaffree,* 472 U.S. 38, 70, 105 S.Ct. 2479, 2497, 86 L.Ed.2d 29 (1985)). The Establishment Clause prohibits the government from "appearing to take a position on questions of religious belief." *Allegheny,* 492 U.S. at 594, 109 S.Ct. at 3101.

Petitioners assert that the City fails the first prong of the *Lemon* test. Specifically, the petitioners contend that the City has given the AOH a preferred "right to control Fifth Avenue" on St. Patrick's Day by "handing the street over to an agency of the Catholic Church." *See* Petitioners' Memorandum of Law In Support of Writ of Mandamus and Prohibition [hereinafter "Pet.Mem."] at 6–7. The petitioners further argue that other groups do not have equal access to Fifth Avenue because it is reserved for the AOH to hold its St. Patrick's Day Parade. Tr. at 22–23.

But the City has shown that all secular groups and non-secular groups are given equal access in obtaining a parade permit. As a matter of course, all applicants seeking a parade permit are given the opportunity to meet the logistic concerns of the City with respect to the running of a parade; i.e., plans to control the parade, number of groups marching, etc. Tr. at 8–11. Such an equal access practice does not endorse any particular religion.

Additionally, the City points out that the AOH privately finances the St. Patrick's Day exclusively by means of private donations. The only public assistance received by the AOH is for police and sanitation services, which the City affords to every public gathering in the City.

The petitioners' conjecture that the City has endorsed the AOH's religious teachings by giving the AOH "control" of Fifth Avenue on St. Patrick's Day is unfounded. The public thoroughfares of our nation are the public fora where individuals seek to engage in basic expressive activity. Religious speakers have the same right of access to public forums as others. *See Widmar v. Vincent,* 454 U.S. 263, 269, 102 S.Ct. 269, 274, 70 L.Ed.2d 440 (1981); *McDaniel v. Paty,* 435 U.S. 618, 641, 98 S.Ct. 1322, 1335–36, 55 L.Ed.2d 593 (1978) (Brennan, J., concurring). "The Supreme Court has made it clear that a policy of permitting open access to a public forum, including non-discriminatory access for religious speech, is a valid secular purpose." *Kreisner v. City of San Diego,* 988 F.2d 883, 890 (9th Cir.1993) (citing *Bd. of Educ. v. Mergens,* 496 U.S. 226, 249, 110 S.Ct. 2356, 2371, 110 L.Ed.2d 191 (1990)).

Furthermore, the petitioners' assertion that the City endorses the AOH's religious beliefs by reserving Fifth Avenue for its AOH's use on St. Patrick's Day will not lie. The City's traditional parade policy of issuing certain annual parade permits to its historical holders has been upheld as a matter of administrative policy. *See Gay Veterans Assoc., Inc. v. The American Legion,* 621 F.Supp. 1510, 1516–17 (S.D.N.Y.1985) (*aff'd* by the Second Circuit orally from the bench Nov. 8, 1985, without written decision). "It allows the police to determine their manpower needs in advance," as well as control and plan for "significant disruption of traffic." *Id.* Accordingly, the City's granting of the permit for the St. Patrick's Day Parade has a valid secular purpose.

### Advancement or Inhibition of Religion

■ The second prong of the *Lemon* test centers on whether "the challenged government action is sufficiently likely to be perceived by adherents of the controlling denominations as an endorsement, and by the nonadherents as a disapproval, of their individual religious choices." *School Dist. of Grand Rapids v. Ball,* 473 U.S. 373, 390, 105 S.Ct. 3216, 3226, 87 L.Ed.2d 267 (1985). The focus of this prong is the primary effect of the government's action. The constitutionality of its effect must also be judged according to the standard of a "reasonable observer." *Allegheny,* 492 U.S. at 620, 109 S.Ct. at 3115 (Blackmun, J.) (citing *Witters v. Dept. of Svcs. for Blind,* 474 U.S. 481, 493, 106 S.Ct. 748, 755, 88 L.Ed.2d 846 (1986)).

Once again the petitioners rely on the argument that the City "place[s] its imprimatur upon the Catholic religion by handing over control of Fifth Avenue to the sponsors of a Catholic religious ceremony." This argument, however, is disingenuous. Certainly, the reasonable observer would not interpret the City's issuance of the Parade permit to AOH as an endorsement of AOH's religious teachings. Instead the City has taken affirmative steps to disassociate itself with the message that the AOH seeks to convey. In fact, Mayor Dinkins, the Mayor of the City of New York has publicly announced that he will not march in the AOH's 1993 St. Patrick's Day Parade. Clearly this cannot be viewed as the City's stamp of approval.

Furthermore, the City has made it clear that it endorses quite a different message. In fact, the City did not grant the permit to the AOH for the 1993 St. Patrick's Day Parade until it was forced to do so by court order, pursuant to my Memorandum and Order Decision, dated February 26, 1993. Accordingly, the issuance of the Parade permit to the AOH does not have the effect of conveying a message of the City's endorsement of AOH's religious beliefs.

### Excessive Entanglement

■ The final prong of the *Lemon* test centers on whether the government action fosters an excessive entanglement with religion. This last prong actually involves a three-part analysis. To determine whether the government entanglement is excessive the court must examine: (1) the character and purposes of the institutions that are benefited; (2) the nature of the aid that the State provides; and, (3) the resulting relationship between the government and the religious entity. *Lemon,* 403 U.S. at 615, 91 S.Ct. at 2112.

■ The petitioners originally alleged that "the City intends to expend extraordinary amounts of money before, during, and after this religious ceremony [the Parade] in order

to insure that the ceremony proceed smoothly." Pet.Mem. at 2. In addition, the petitioners contended that uniformed City employees will participate in the Parade and "will be paid by taxpayers for their religious observance." *Id.* At the hearing, however, the petitioners retreated from this unfounded position. Instead, the petitioners merely assert that the participation of off-duty officers marching in the Parade in their uniforms constitutes the City's excessive entanglement with religion.

I disagree. In the case at bar, there is no appreciable entanglement with religion. The AOH privately funds the St. Patrick's Day parade. The AOH is responsible for taking care of the numerous details and arrangements inherent in running the parade. The City provides the police and sanitation services, which the City furnishes to every public gathering in the City.

If there was no excessive entanglement in *O'Hair v. Andrus,* 613 F.2d 931 (D.C.Cir. 1979), it follows that there can be no excessive entanglement here. In *O'Hair,* the United States Court of Appeals for the District of Columbia, held, *inter alia,* that a mass to be said by Pope John Paul II on the National Mall did not constitute excessive entanglement. *Id.* at 936. The court stated that "it is an important function of government to permit such large assemblies in outdoor parks by our citizens. Provision of police, sanitation and related public services is a legitimate function of government and not an 'establishment' of religion." *Id.*

In this case, as in *O'Hair,* the government is simply performing its important function of permitting large assemblies. The police and sanitation services that the City provides for this, and every parade in New York City, is a legitimate function of the government and by no means the "establishment" of religion.

---

**2.** This Memorandum and Order was researched and written starting at 5:40 P.M. yesterday afternoon. I have been engaged in case conferences, two lengthy sentence proceedings and selecting a jury in a criminal case as this memorandum was being typed and finished. It represents my find-

## CONCLUSION

 On March 15, 1993, the defendants moved to dismiss this action under Rule 12(b)(6) Federal Rules of Civil Procedure and requested Rule 11 sanctions against the petitioners. Since I have already denied the requested writ of prohibition and mandamus, there is no need to discuss the Rule 12(b)(6) motion. Rule 11 sanctions would clearly be merited against counsel for the petitioners for this totally frivolous, unnecessary and meanspirited action, except for the fact that all of their filings were in the state court and Rule 11 cannot reach that far.

In sum, the Verified Petition for relief by way of writ of prohibition or mandamus is denied and the matter dismissed. The respondents' Rule 12(b)(6) motion is moot and therefore denied. The respondents' motion for Rule 11 sanctions is also denied.

SO ORDERED.[2]

ings and my basic thinking on the matter and is being filed now to comport with the Federal Rules of Civil Procedure and with the "due process" to which litigants are entitled. I reserve the right to amend it before final publication.